Elizabeth UNDERWOOD, Plaintiff,

v.

CITY OF FORT MYERS, a Municipal Corporation, Defendant.

Civ. A. No. 93–168–FTM–17(D).

United States District Court,
M.D. Florida,
Fort Myers Division.

Oct. 18, 1993.

As Corrected Nov. 19, 1993.

Kenneth Gordon King, Craig, Ryan & Mast, Naples, FL, for plaintiff.

Peter L. Sampo, Hogg, Allen, Norton & Blue, Coral Gables, FL, for defendant.

## ORDER ON MOTION TO DISMISS

KOVACHEVICH, District Judge.

This cause is before the Court on Defendant's Motion to Dismiss Counts I, III and IV of the Complaint pursuant to Rule 12(b)(6) and to strike Plaintiff's demand for trial by jury as to the remaining counts

under Title VII, filed July 12, 1993, and response thereto, filed August 2, 1993.

## STANDARD OF REVIEW

■ A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that Plaintiff can prove no set of facts that would entitle her to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). A trial court, in ruling on a Motion to Dismiss, is required to view the Complaint in the light most favorable to the Plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

## FACTS

Plaintiff, ELIZABETH UNDERWOOD, a Hispanic American of Puerto Rican descent, is a former employee of the Defendant, CITY OF FORT MYERS. Plaintiff began her employment with Defendant on or about November 28, 1988, in the position of Office Support B. Plaintiff alleges that her employment was terminated on or about October 11, 1991. At the time of termination, the Plaintiff alleges she was performing the job duties of an Administrative Aide A. Plaintiff further alleges that she received a notice of layoff on or about September 30, 1991, upon the pretext that her position was being eliminated. Plaintiff maintains she was laid off after she made a claim to the Defendant for "out of title" pay concerning a compensation discrepancy between her job designation as Office Aide B and the job duties she was actually performing, those of Administrative Aide A. Plaintiff's request for "out of title" pay was denied. After her layoff, Plaintiff, was advised that she could apply for other positions with the Defendant for which she was eligible. Despite Plaintiff's attempts to apply for other positions, the Plaintiff maintains that the Defendant declined to accept her employment application for any position including the position for Administrative Aide A, the position whose duties she had been performing, but which remained vacant thereafter.

Plaintiff alleges that Defendant's termination was under the auspices of a layoff or elimination of her job duties and was entirely retaliatory, pretextual, and committed for the reason of Plaintiff's Puerto Rican origin. In support of her allegations, Plaintiff avers that following her termination on October 11, 1991, her position was temporarily filled the following Monday October 14, 1991, by a white employee. Plaintiff contends she remained qualified for the position as Administrative Aide A as demonstrated by the fact that she had successfully performed those duties since July 8, 1991, until the time of her layoff. Plaintiff further suggests that her position was the only clerical position terminated by way of job elimination within the department. Plaintiff believes that Defendant falsely represented that there was a hiring freeze relative to the position of Administrative Aide A, and related positions, as the position was refilled by a white employee thereafter. Plaintiff feels she was qualified to fill the position of Administrative Aide A as she had continuously performed the job since July 8, 1991. In addition, the Plaintiff alleges that the Defendant also refilled her former position of Office Support B with a white employee, a position for which she also remained eligible.

Plaintiff further declares that her involuntary termination by way of "layoff" was in response to and in retaliation for her support of her husband, JIMMY UNDERWOOD, an African American, who was also involuntarily terminated and has alleged discrimination based on his race and national origin.

Plaintiff filed a charge of discrimination with the Lee County Board of County Commissioners, Department of Equal Opportunity on October 2, 1991, and an amended charge of discrimination on October 30, 1991. Plaintiff also filed a charge of discrimination with the Equal Employment Opportunity Commission on January 18, 1992. The U.S. Equal Employment Opportunity Commission, Miami District Office, issued Plaintiff a right-to-sue letter on December 27, 1992,[1] which stated the Plaintiff had ninety (90) days within which to file suit against the

---

1. Plaintiff's Complaint alleges that the right-to-sue letter was issued March 26, 1993. A copy of the letter is attached to the Complaint as exhibit # 4 and is clearly dated December 27, 1992.

Defendant in federal court. Plaintiff filed the instant action on June 22, 1993.

## DISCUSSION

Defendant, CITY OF FORT MYERS, a Municipal Corporation, filed its Motion to Dismiss Counts I, III, and IV of the Complaint and to strike Plaintiff's demand for trial by jury as to the remaining counts under Title VII on July 12, 1993. The Defendant asserts that Counts I, III, and IV fail to state a claim upon which relief may be granted. The Court's determination of Defendant's Motion to Dismiss with respect to Counts I, III, and IV, as they specifically apply to Plaintiff's 42 U.S.C. § 1983 claim, is dispositive. Therefore, the Court declines to determine the merits of Defendant's Motion to Dismiss Count I, Count III, and Count IV as they pertain to 42 U.S.C. §§ 1981 and 1982. In addition, the Court notes that the Plaintiff has voluntarily withdrawn her 42 U.S.C. § 1982 claim. Plaintiff's Title VII claims shall remain intact. The Court will also consider the Defendant's Motion to Strike Plaintiff's demand for jury trial.

In Counts I, III and IV of the Complaint, Plaintiff asserts that the acts and practices of Defendant constitute deliberate violations of the Plaintiff's contractual and civil rights and entitlement to equality of treatment and employment as afforded to white citizens, under 42 U.S.C. §§ 1981, 1982, and relative to municipal employers under § 1983. In response, the Defendant contends that 42 U.S.C. §§ 1981, 1982, and 1983 do not afford a cause of action for discriminatory termination of employment.

The relevant language of 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

In *Jett v. Dallas,* 491 U.S. 701 at 734, 109 S.Ct. 2702, 2721, 105 L.Ed.2d 598 the Court was asked to decide "whether a public employee who claims job discrimination on the basis of race must show that the discrimination resulted from official 'policy or custom' in order to recover under 42 U.S.C. Section 1981." That court held that the express " 'action at law' provided by Section 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by Section 1981 when the claim is pressed against a state actor." Thus, in *Jett,* the petitioner, in order to prevail on a claim for damages against the respondent school district, had to show that the violation of his "right to make contracts" protected by Section 1981 was caused by a custom or policy within the meaning of *Monell v. Department of Social Services of City of N.Y.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and subsequent cases. *Jett,* 491 U.S. at 734, 109 S.Ct. at 2721. The petitioner in *Jett* filed suit against the respondent school district specifically naming individuals responsible for the alleged discrimination. The case was ultimately remanded to determine whether the alleged individual state actor possessed final policymaking authority under state law such that the employer school district would be liable for damages.

In *St. Louis v. Praprotnik,* 485 U.S. 112 at 123, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988), the plurality reaffirmed the teachings of prior cases to the effect that "whether a particular official has 'final policymaking authority' is a question of state law." *Jett,* 491 U.S. at 737, 109 S.Ct. at 2723 citing *Praprotnik,* 485 U.S. at 123, 108 S.Ct. at 924 quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469 at 483, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986).

> As with other questions of state law relevant to the application of federal law, the identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge before the case is submitted to the jury. Reviewing the relevant legal materials, in-

cluding state and local positive law, as well as " 'custom or usage' having the force of law," *Praprotnik,* [485 U.S.] at 124, n. 1 [108 S.Ct. at 924] the trial judge must identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue. Once those officials who have the power to make official policy on a particular issue have been identified, it is for the jury to determine whether their decisions have caused the deprivation of rights at issue by policies which affirmatively command that it occur, *Jett* [491 U.S.] at 736, [109 S.Ct. at 2722] see *Monell v. Dept. of Social Services of the City of New York, et al.,* [436 U.S.] at 661, n. 2, [98 S.Ct. at 2021, n. 2] or by acquiescence in a longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity. *Jett* [491 U.S.] at 736 [109 S.Ct. at 2722], see *Pembaur,* 475 U.S. at 485–487, 106 S.Ct. at 1301–1302.

In *Brown v. City of Fort Lauderdale,* 923 F.2d 1474 at 1477, (11th Cir.1991), this Court found that in order to prevail on a civil rights claim against a municipality, the plaintiff must allege a citywide policy or custom of discrimination. The plaintiff must show a purpose or intent to discriminate in proving an equal protection violation based on racial discrimination. *Brown* at 1478, fn. 7, citing *Arnold v. Board of Education of Escambia County, Ala.,* 880 F.2d 305, 316 n. 16 (11th Cir.1989) (citing *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) and *Personnel Adm'r of Mass. v. Feeney,* 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979)).

■ "It is well established that a municipality may be held liable under Section 1983 only when the deprivation at issue was undertaken pursuant to city 'custom or policy,' and not simply on the basis of respondeat superior." *Brown* at 1479 citing *St. Louis v. Praprotnik,* 485 US 112, n. 2, 108 S.Ct. 915 n. 2, 99 L.Ed.2d 107 (1988); *Pembaur v. Cincinnati,* 475 U.S. 469, 478–80, 106 S.Ct. at 2037; *Mandel v. Doe,* 888 F.2d 783, 791 (11th Cir.1989). Thus, "recovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality'—that is, acts which the municipality has officially sanctioned or ordered." *Id.* citing *Pembaur,* 475 U.S. at 480, 106 S.Ct. at 2037 and quoting *Mandel,* at 791. "A 'municipal act' is not, however, limited to decisions made by the city's official legislative body or in written agreements. City policy also may be implicated by the acts of individual policymaking officials or by pervasive city customs." *Brown,* citing *Mandel,* at 791.

■ A city is responsible for any actions taken by the particular official who "possesses final authority to establish municipal policy with respect to the action ordered," *Brown* at 1480, citing *Pembaur,* 475 U.S. at 481, 106 S.Ct. at 1299. In other words, a municipal official who has "final policymaking authority" in a certain area of the city's business may by his or her action subject the government to a Section 1983 liability when the challenged action falls within that authority. *Brown* at 1480.

■ To prove a Section 1983 liability against a municipality based on custom, a plaintiff must establish a widespread practice that, "although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law," *Brown* at 1380, citing *Praprotnik,* 485 U.S. at 127, 108 S.Ct. at 926 (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). In other words, a longstanding and widespread practice is deemed authorized by the policymaking officials because they must have known about it but failed to stop it.

■ In the instant case, Plaintiff UNDERWOOD has failed to allege anywhere in her Complaint that Defendant CITY OF FORT MYERS, or individual employees of Defendant, have engaged in conduct causing the deprivation of rights at issue by policies which affirmatively command that it occur, or by acquiescence in a longstanding practice or custom which constitutes the "standard operating procedure" of the local governmental entity as required by the *Jett* line of cases. Rather, Plaintiff UNDERWOOD alleges only

that the violative discriminatory conduct occurred in relation to her and not as a custom or policy of the Defendant. Plaintiff offers no argument that the Defendant CITY OF FORT MYERS, has officially sanctioned or ordered the alleged discriminatory conduct of the persons responsible for her "layoff" or involuntary termination. Neither does the Plaintiff argue that it is the custom or policy of Defendant to remove persons from employment by way of "layoff" or prevent their rehire, through pretextual hiring freezes, which are designed to prevent persons of Hispanic origin from gaining or retaining employment. Therefore, Plaintiff has failed to properly plead a 42 U.S.C. § 1983 claim for relief against a municipal defendant.

The Court notes that 42 U.S.C. § 1983 was overruled by statute when the Civil Rights Act of 1991 was enacted. See *Lynch v. State*, 602 N.E.2d 1079, (Ind.App. 3 Dist.1992). The Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071 ("the Act"), provides that Title VII plaintiffs may recover compensatory and punitive damages in addition to reinstatement and back pay. It also provides that Title VII plaintiffs requesting compensatory and punitive damages may seek a jury trial. *Curtis v. Metro Ambulance Service, Inc.*, 982 F.2d 472, 473 (11th Cir.1993). However, the effective date of the Act was not until November 21, 1991. There has been significant judicial discussion and debate over the retroactivity of the Act to cases which arose before the effective date of the Act but which had not resulted in final judgement as of that effective date. In *Baynes v. AT & T Technologies, Inc.*, 976 F.2d 1370 (11th Cir.1992), the court held that compensatory and punitive damages and jury trial provisions of the Act were not retroactively applicable to cases in which a judgment had been entered before that effective date. *Id.*, at 473. Likewise, in *Curtis*, the court held that the Act would not apply retroactively to suits which were pending but had not resulted in final judgment as of the effective date of the Act. In *Sussman v. Salem, Saxon and Nielsen, P.A., et al.*, 826 F.Supp. 1416 (M.D.Fla.1993), this Court confirmed that it would follow the decisions of *Baynes* and *Curtis*. The Court noted that the question of retroactivity warrants en banc review, but until that time the provisions of the Civil Rights Act are applicable only to actions arising after November 21, 1991. *Id.* In the case before us, although the Plaintiff UNDERWOOD did not file her Complaint until June 22, 1993, the action arose prior to the effective date of November 21, 1991. Therefore, the Civil Rights Act of 1991 and its provisions are not appropriately applied to the instant action. Accordingly it is

**ORDERED** the Defendant's Motion to Dismiss Count I, Count III as it applies to 42 U.S.C. §§ 1981, 1982, and 1983, and Count IV as it applies to 42 U.S.C. § 1983 be **granted.** It is further **ordered** that the Defendant's Motion to Strike Plaintiff's Demand for Trial by Jury be **granted.** Plaintiff **shall have ten (10) days** from this date of this order in which to file an amended complaint correcting the deficiencies noted herein. **Failure to timely file the amended complaint will result in dismissal, without further notice.**